J-S30011-20 & J-S30012-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KASHIF OMAR ELLIS | : | |
| Appellant | : | No. 1577 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001880-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| KASHIF ELLIS | : | |
| Appellant | : | No. 1580 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000773-2018

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    FILED AUGUST 11, 2020

In these consolidated appeals, Kashif Omar Ellis (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder, robbery, criminal conspiracy, aggravated assault, burglary,

_____

* Former Justice specially assigned to the Superior Court.

criminal trespass, recklessly endangering another person, discharging a firearm into an occupied structure, criminal use of a communication facility, and possession with intent to deliver a controlled substance (collectively, "the murder charges").[1] The jury also convicted Appellant, in a separate case, of intimidation of a witness/victim, and retaliation against a witness/victim[2] (collectively, "the intimidation charges"). We affirm.

On July 13, 2013, Appellant orchestrated a robbery with his then-paramour and co-defendant, Taylor Griffith (Griffith), and Quasim Green (Green). At Appellant's direction, Griffith visited the residence of the victim, Stephen Lamont Hackney (Decedent). While inside the residence, Griffith texted Appellant, informing him that she saw large quantities of narcotics and U.S. currency, and that the Decedent was alone and unarmed. Griffith, who was a Commonwealth witness at trial, testified that she unlocked the back door to the Decedent's residence so that Appellant and Green could enter. Appellant barged into the Decedent's bedroom and shot him three times, resulting in his death. Appellant and his co-defendants then stole the cash and narcotics and fled.

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 3701(a)(1)(i), 903(a), 2702(a)(1) and (4), 3502(a)(1), 3503(a)(1)(i), 2705, 2707.1(a), 7512(a); 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S.A. §§ 4952(a)(1), 4953(a).

The police responded to the scene and discovered the Decedent's body, as well as large quantities of cash nearby. After securing and searching the surrounding area, police seized a Samsung cellphone (Samsung phone), which had been discarded in the alley behind the Decedent's residence. The police obtained a search warrant for the digital contents of the Samsung phone. Forensic analysis of the Samsung phone revealed that it belonged to Green.

The investigation into the murder went on for several years. During the investigation, the police utilized a software geo-location mapping program called CellHawk.[3] The investigating officers accessed CellHawk geo-location data for two separate cell phones that, police determined, were respectively associated with Appellant and Griffith. The data showed these phones in the general area of the Decedent's residence on the night of the murder. It further showed that both Appellant and Griffith's phones were in the Philadelphia area shortly after the murder, which corroborated Griffith's account. The police obtained the CellHawk evidence, with respect to both Appellant and Griffith's phones, via a court order.

Notably, one of the police officers involved in the investigation was former Altoona police detective Matthew Starr (Officer Starr). After most of

_____

[3] This program collects historical data from cellular tower "pings" to locate cellphone users on a given date and time.

the investigation had occurred, Officer Starr was terminated from the police force and convicted of fraud in an unrelated matter.[4]

In July 2017, the Commonwealth filed the murder charges against Appellant at CR 1880-2017 (No. 1880-2017). The Commonwealth subsequently initiated a second case against Appellant in May 2018, docketed at CR 773-2018 (No. 773-2018), charging him with the intimidation charges.[5] The trial court joined the two cases.

Appellant subsequently filed an omnibus pre-trial motion (OPT motion). The OPT motion sought, inter alia, suppression of (1) Appellant's CellHawk historical cell site location information; and (2) recordings of inculpatory telephone calls and letters that Appellant made while incarcerated pending trial ("the prison calls evidence."). The trial court conducted two hearings, after which it denied the OPT motion.

In November 2018, Appellant filed a motion (the recusal motion), asserting that the entire bench of Blair County, as well as the District Attorney's Office, should be disqualified from participating in his trial. He argued that there was a conflict of interest because Griffith was the daughter

_____

[4] Neither party called Officer Starr as a witness at Appellant's trial.

[5] These charges arose out of Appellant's threatening to kill Griffith because she agreed to testify as a Commonwealth witness against Appellant in exchange for pleading guilty to third-degree murder, and receiving a sentence of 15 to 30 years in prison.

of the Blair County Prothonotary/Clerk of Courts, Robin Patton (Prothonotary Patton). The trial court denied the recusal motion.

On January 3, 2019, four days prior to jury selection, Appellant filed a motion for a continuance, which the trial court denied. Jury selection commenced on January 7, 2019. Appellant was shackled during jury selection and trial. For this reason, Appellant filed a motion for a mistrial, which the trial court denied. The jury convicted Appellant of the murder charges and the intimidation charges.

On April 16, 2019, the trial court sentenced Appellant, at No. 1880-2017, to life in prison without the possibility of parole. At No. 773-2018, the court imposed an aggregate sentence of 5 to 10 years in prison, to run consecutively to the sentence at No. 1880-2017.

On April 26, 2019, Appellant filed a timely post-sentence motion for reconsideration of sentence/new trial. He challenged the trial court's denial of his claims raised in the OPT motion and recusal motion. He further asserted that he should not have been shackled during jury selection, and that the Commonwealth committed a discovery violation by failing to provide the defense with certain witness statements prior to trial. The trial court denied the post-sentence motion by an order and opinion entered on December 2, 2019.

Appellant timely filed notices of appeal at each docket number, followed by court-ordered concise statements of errors complained of on appeal,

pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). This Court consolidated the appeals sua sponte.

In the appeal at No. 1880-2017, Appellant presents nine issues for review:

I. WAS [APPELLANT] DENIED HIS RIGHT TO DUE PROCESS AND A FAIR AND IMPARTIAL TRIAL WHEN HE WAS PARADED IN FRONT OF THE JURY AT JURY SELECTION IN SHACKLES?

II. WAS [APPELLANT] DENIED DUE PROCESS AND A RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN THE TRIAL COURT REFUSED TO SUPPRESS THE INTERCEPTION OF [APPELLANT'S] PHONE RECORDS AND WRITTEN COMMUNICATIONS OBTAINED FROM THE STATE CORRECTIONAL INSTITUTIONS OF GRATERFORD AND HUNTINGDON WITHOUT A WARRANT?

III. DID THE COMMONWEALTH COMMIT BRADY[6] VIOLATIONS IN FAILING TO TIMELY DISCLOSE THE STATEMENT OF ASHLEY BRUBAKER AND TO TIMELY REVEAL THE COMMONWEALTH'S KNOWLEDGE OF THE UNTRUTHFULNESS OF THE STATEMENT OF POTENTIAL COMMONWEALTH WITNESS KELSEY BERGMAN?

IV. DID THE COMMONWEALTH VIOLATE THE RULES OF DISCOVERY BY FAILING TO PROVIDE TIMELY NOTICE OF THE TESTIMONY OF ASHLEY BRUBAKER AND THE UNTRUTHFULNESS OF THE STATEMENT OF POTENTIAL COMMONWEALTH WITNESS KELSEY BERGMAN[,] ALONG WITH FAILING TO PROVIDE NOTICE OF THE EXPERT TESTIMONY OF AGENT THOMAS MOORE OF THE ATTORNEY GENERAL'S OFFICE[,] ALL OF WHICH INFORMATION SHOULD HAVE BEEN REVEALED IN DISCOVERY[?]

_____

6 See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

V.    DID THE COURT VIOLATE [APPELLANT'S] RIGHT UNDER THE CONFRONTATION CLAUSE OF BOTH THE UNITED STATES CONSTITUTION AND THE PENNSYLVANIA CONSTITUTION TO CROSS-EXAMINE TRAVIS DENNY[,] WITH RESPECT TO A LETTER SUBMITTED TO HIS ATTORNEY BY HIS GIRLFRIEND SEEKING A REDUCTION IN THE SENTENCE HE WAS SERVING?

VI.    DID THE TRIAL COURT ERR IN DENYING A HEARING ON [APPELLANT'S] FRANKS[ V. DELAWARE, 438 U.S. 154 (1978)] MOTION WITH RESPECT TO THE SEARCH WARRANTS BASED UPON THE STATEMENTS AND INFORMATION PROVIDED BY AN UNRELIABLE WITNESS[,] AS WELL AS THE ACTIONS AND ACTIVITY FROM [OFFICER] STARR WHO WAS SUBSEQUENTLY CONVICTED AND SENTENCED ON CHARGES INVOLVING FRAUD?

VII.    DID THE COURT DENY [APPELLANT'S] RIGHT TO A FAIR AND IMPARTIAL TRIAL BY REFUSING TO RECUSE ITSELF AND/OR RECUSE THE DISTRICT ATTORNEY OF BLAIR COUNTY WHEN HIS CO-DEFENDANT, TAYLOR GRIFFITH[,] AND MAIN COMMONWEALTH WITNESS WAS THE DAUGHTER OF THE PROTHONOTARY AND CLERK OF COURT OF BLAIR COUNTY?

VIII.    WAS [APPELLANT] IMPROPERLY DENIED HIS REQUEST FOR A CONTINUANCE FILED WITH THE COURT ON JANUARY 3, 2019 AND DENIED BY ORDER OF COURT DATED JANUARY 4, 2019 FILED ON JANUARY 7, 2019[?]

IX.    WAS [APPELLANT] DENIED HIS RIGHT TO DUE PROCESS AND A FAIR AND IMPARTIAL TRIAL WHEN THE COMMONWEALTH OBTAINED EVIDENCE AS TO PINGING [O]F ... [APPELLANT'S] CELL PHONE THROUGH A COURT ORDER INSTEAD OF PROPERLY OBTAINING A WARRANT FOR SAID EVIDENCE AS REQUIRED BY CARPENTER V. UNITED STATES, 585 U.S. ___, 138 [S. CT.] 2206, 201 LAWYERS EDITION 2D. 507[] (2018)[?]

Appellant's Brief (1577 WDA 2019) at 6-9 (footnote added, issues ordered).

In the appeal at No. 773-2018, Appellant raises three issues. These issues are identical to and correspond with three of the issues that Appellant presents above; namely, issues 1, 7 and 8.[7] See Appellant's Brief (1580 WDA 2019) at 6. Accordingly, we will address those issues together.

In his first issue, Appellant argues that he was deprived of his right to a fair trial, and his presumption of innocence, where he was "paraded" in front of the jury while restrained with shackles. Appellant's Brief at 19-24. Appellant contends that the trial court thus erred in denying his motion for a mistrial. Id. at 19.

> It is well settled under common law and the Constitution that, part and parcel of the concept of a fair trial, is a defendant's right to be permitted to appear free from shackles or other physical restraint – this right, however, is not absolute. Commonwealth v. Jasper, 610 A.2d 949, 955 (Pa. 1992). Circumstances that have justified the use of restraint include where a defendant disrupts the proceedings, where there is a danger of escape, and where the court believes that an unrestrained defendant may attack others. Id. Proper security measures are within the sound discretion of the trial court, and, thus, will not be disturbed absent an abuse of that discretion. Commonwealth v. Patterson, 308 A.2d 90, 94 (Pa. 1973).

In the Interest of F.C. III, 2 A.3d 1201, 1222 (Pa. 2010) (citations modified). Additionally, "where the trial evidence shows that a violent defendant was incarcerated at the time of trial, no prejudice occurs even when restraints are visible to the jury." Jasper, 610 A.2d at 955.

_____

[7] Citations to Appellant's arguments for these issues reference Appellant's Brief at 1577 WDA 2019.

The trial court rejected this issue on the basis that:

(1) Appellant failed to establish that the jury actually saw him in restraints at any point;

(2) Even if the restraints were visible, the jury already knew that Appellant was incarcerated by other information, and thus, he suffered no prejudice; and

(3) In light of Appellant's numerous misconducts in pre-trial incarceration, his threatening to kill a Commonwealth witness, and his unruly courtroom behavior, it was necessary to place him in restraints to ensure safety and courtroom order.[8]

See Opinion and Order, 9/20/19, at 20-22. Upon review, we incorporate further the trial court's reasoning, which is supported by the law and the record. See id. In so doing, we note that during pre-trial proceedings, the trial court expressly warned Appellant that his threatening and unruly conduct could result in him being restrained during trial. See N.T., 3/23/18, at 7; N.T., 7/30/18, at 35-36. In addition, during jury selection, Appellant was dressed in civilian clothing, his right hand was free, and the defense table was equipped with a "skirt", which blocked the jury from seeing anything below Appellant's waist. N.T., 1/7/19, at 20. Finally, the court stated that it would have been willing to issue a curative instruction to the jury concerning restraints and/or Appellant's incarceration, but defense counsel did not

_____

[8] While Appellant was incarcerated in the Blair County Prison awaiting trial, he threatened to harm Griffith and prison personnel. In pre-trial proceedings, the trial court warned Appellant that if he continued this conduct, the court would have no choice but to shackle him in further court proceedings.

request an instruction. See id. at 10-15. We therefore find no merit to Appellant's first issue.

In his second issue, Appellant argues that the trial court erred by depriving him of a fair trial when it refused to suppress the prison calls evidence; Appellant claims the evidence was the product of an unlawful search and seizure. See Appellant's Brief at 27-31.

The trial court likewise addressed this claim in its opinion, summarizing the relevant law concerning the admissibility of such evidence, and determining that denial of the suppression request was proper because:

> (1) The court initially denied Appellant's motion to suppress the evidence "without prejudice" to Appellant to renew and further develop the claim, but he never did so;
>
> (2) Appellant never objected to the admission of this evidence at trial; indeed, he actually consented to the entire recording of Appellant's calls from prison being played to the jury; and
>
> (3) Appellant failed to articulate any reasonable expectation of privacy that he had concerning these communications.

See Opinion and Order, 9/20/19, at 16-19. Again, the court's reasoning is supported by the record and law, and we agree with its conclusion. We further note that the Commonwealth's interception of Appellant's prison phone calls was permitted under Pennsylvania's Wiretap Act, which provides in relevant part that it is not unlawful for:

> an investigative officer, a law enforcement officer or employees of the Department of Corrections for State correctional facilities to intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility [provided that delineated conditions are met].

18 Pa.C.S.A. § 5704(13). Appellant, as a state inmate, was given an automated warning that any inmate telephone call could be monitored or recorded. Accordingly, we reject Appellant's second issue. See id.

We address Appellant's third and fourth issues together because they are related. Appellant claims the Commonwealth violated Brady, supra, by failing to alert him to material untruths in the police statement given by "proposed" Commonwealth witness Kelsey Bergman (Bergman), and to give him advance notice of her testimony.[9] See Appellant's Brief at 31-34; 37-38. Appellant argues that this information would have assisted his defense theory and provided him an opportunity to undermine the credibility of Griffith's testimony. Id. at 33-34. Appellant further contends that the Commonwealth committed a second Brady violation concerning Ashley Brubaker (Brubaker), who testified as a Commonwealth witness and spoke with police on the night of the murder. Id. at 34, 37-38.

Appellant's claim presents a question of law; our standard of review is de novo and our scope of review is plenary. Commonwealth v. Mullins, 918 A.2d 82, 84 (Pa. 2007). To prove a Brady violation, a defendant must show: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." Commonwealth v. Tharp, 101 A.3d

_____

[9] Neither party called Bergman as a witness at trial.

- 11 -

736, 747 (Pa. 2014) (citation omitted). "Conversely, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." Commonwealth v. Dennis, 17 A.3d 297, 308 (Pa. 2011) (citation omitted). The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed material evidence. Commonwealth v. Cam Ly, 980 A.2d 61, 75 (Pa. 2009); see also id. (stating that the "prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial") (citation omitted).

Appellant's claims are unavailing. Concerning Bergman, the Commonwealth never called her to testify. Appellant had an opportunity to present her testimony; however, he declined to do so. Moreover, Appellant fails to identify Bergman's alleged "untruths," and advances only a general claim of a Brady violation. See Commonwealth v. Tielsch, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Finally, the record supports the Commonwealth's response that it: (1) provided Appellant with Bergman's police statement during discovery; and (2) spoke with Appellant's defense counsel prior to trial and pointed out the discrepancies in Bergman's statements. See Response to Post-Sentence Motion, 8/27/19, at 10; see also id. at 11 (asserting that the inconsistencies

- 12 -

in Bergman's statements had nothing to do with Appellant because she was not present at the Decedent's residence when the murder occurred).

Regarding Appellant's second Brady claim implicating Brubaker, Appellant raises this claim for the first time on appeal; accordingly, it is waived. See Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); see also Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278, 1288 (Pa. Super. 2004) (en banc) ("[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.") (citation omitted). Additionally, Appellant's counsel did not object to the introduction of Brubaker's testimony or assert any unfair surprise, even after an offer of proof by the prosecutor. See N.T., 1/29/19, at 138-39.[10] We discern no record support for Appellant's claim that the Commonwealth possessed materials documenting Brubaker's statements that were not provided in discovery.

Finally, in connection with Appellant's fourth issue, he merely asserts, in two sentences, that the Commonwealth committed a third Brady violation by failing to provide the defense advance notice of the testimony of Agent

_____

[10] The record reflects that there was no formal police interview of Brubaker until the time of trial, on January 29, 2019, and defense counsel thoroughly cross-examined Brubaker about her statements. See N.T., 1/29/19, at 138-39, 156-63.

Thomas Moore (Agent Moore) of the Attorney General's Office.[11] Appellant's Brief at 38. However, because Appellant has failed to develop this claim in any meaningful fashion, we are precluded from considering it. See Tielsch, supra; see also Coulter v. Ramsden, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (stating that mere issue spotting without analysis or legal citation to support an assertion precludes appellate review of a matter).[12] Appellant's third and fourth issues do not merit relief.

In his fifth issue, Appellant asserts that the trial court committed reversible error by precluding his counsel from cross-examining Commonwealth witness Travis Denny (Denny), who was Appellant's former cellmate.[13] See Appellant's Brief at 38-41. Specifically, Appellant argues that he was deprived of his right to confrontation concerning a certain letter that Denny allegedly had "knowledge of";[14] the letter purportedly expressed

_____

[11] The Commonwealth presented Agent Moore as an expert witness regarding the meaning of certain phrases Appellant used in telephone calls he placed while incarcerated.

[12] Even if Appellant had properly developed this claim, we would have concluded that it lacks merit for the reasons set forth in the trial court's opinion. See Opinion and Order, 12/2/19, at 19-20 (stating that Agent Moore's expert testimony was not a surprise to the defense where the Commonwealth filed of record a document that outlined his testimony).

[13] Denny testified that he was incarcerated with Appellant in 2015, when Appellant confessed to him that he shot someone named Steve and stole his money.

[14] Denny's girlfriend authored this letter and mailed it to Denny's attorney.

Denny's request for a reduced sentence in exchange for his testimony at Appellant's trial. See id. at 38, 40.

The standard of review applicable to this question of law is de novo. Commonwealth v. Tejada, 161 A.3d 313, 317 (Pa. Super. 2017). The trial court has once again capably addressed Appellant's issue, citing applicable law, and determining that Appellant was not deprived of his right to confront Denny where:

> (1) Appellant's counsel, in fact, attacked Denny's credibility and motive for testifying against Appellant;
>
> (2) Denny did not author the letter; and
>
> (3) The trial court did not bar Appellant from seeking to admit the letter via the testimony of its author.

See Opinion and Order, 9/20/19, at 23-25. The trial court's reasoning is supported by the record and law, and we agree with its determination; thus, we affirm on this basis. See id.

In his sixth issue, Appellant contends that the trial court erred in denying his request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Appellant argues that he should have been permitted to "explore the issues which resulted in [Officer] Starr's termination" and conviction, where Officer Starr was the affiant of the affidavit of probable cause for the Samsung cellphone belonging to co-defendant Green.[15] Appellant's Brief at 41-43.

---

[15] Appellant joined in Green's omnibus pre-trial motion for a Franks hearing.

The Pennsylvania Supreme Court summarized the United States Supreme Court's holding as follows:

> [Franks] addressed whether a defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual averments in an affidavit of probable cause. The Court held where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request. The Court emphasized the defendant's attack on the affidavit must be "more than conclusory and must be supported by more than a mere desire to cross-examine"; the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. If the defendant meets these requirements, but the remainder of the affidavit's content is still sufficient to establish probable cause, no hearing is required. If the affidavit's remaining content is insufficient, a hearing is held, at which the defendant must establish, by a preponderance of the evidence, the allegation of perjury or reckless disregard. If he meets this burden, the affidavit's false material is disregarded; if its remaining content is insufficient to establish probable cause, the search warrant is voided, and the fruits thereof are excluded.

Commonwealth v. James, 69 A.3d 180, 188 (Pa. 2013) (citations omitted).

Essentially, Appellant claims that because Officer Starr committed fraud in an unrelated matter, he may have committed fraud in Appellant's case. This claim is unavailing. The Samsung phone belonged to Green, not Appellant, and Appellant asserted no possessory interest in it. Appellant never requested a Franks hearing relative to the probable cause affidavit. Moreover, Appellant's claim is undeveloped; he fails to reference any statements in the affidavit he contends to be purportedly false. See James, supra (emphasizing that a defendant's Franks attack on an affidavit must be

more than conclusory, and that the defendant must put forth a "substantial" preliminary showing that the affidavit contains falsehoods); Commonwealth v. Iannaccio, 480 A.2d 966, 969 n.1 (Pa. 1984) (holding that bald, conclusory statements are insufficient to rise to the level of a substantial preliminary showing under Franks).

In his seventh issue, Appellant argues that the trial court erred in denying his recusal motion. See Appellant's Brief at 45-52. Appellant contends that the family relationship between Griffith and Prothonotary Patton created a conflict of interest implicating the Blair County District Attorney's Office and the entire bench of Blair County. See id. According to Appellant, Patton, who was not a witness at Appellant's trial, had a "vested interest" in the outcome. Id.

We review a claim challenging the denial of a recusal motion for an abuse of discretion, and our review is "exceptionally deferential." In re L.V., 209 A.3d 399, 415 (Pa. Super. 2019).

> We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. A trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned. In order to prevail on a motion for recusal, the party seeking recusal is required to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

Id. (citations omitted).

We also review the denial of a motion to disqualify a prosecutor for an abuse of discretion. Commonwealth v. Sims, 799 A.2d 853, 856 (Pa. Super. 2002). A district attorney should be disqualified where "an actual conflict of interest affecting the prosecutor exists in the case." Commonwealth v. Eskridge, 604 A.2d 700, 702 (Pa. 1992). However, a mere allegation or appearance of impropriety or animosity is insufficient to establish an actual conflict of interest. Sims, 799 A.2d at 857.

In support of his claim, Appellant primarily relies on two decisions, Eskridge, supra, and Comm. Ex rel. Amor v. Amor, 398 A.2d 173 (Pa. Super. 1979) (en banc). See Appellant's Brief at 49-51. However, both cases are readily distinguishable. See Eskridge, 604 A.2d at 701-02 (holding that an actual conflict barring prosecution existed where the county district attorney's law firm represented a car accident victim in a personal injury action previously instituted against the defendant, and the accident victim would be a witness in the same defendant's separate criminal case); Amor, 398 A.2d at 174 (holding that recusal of the entire county bench was required where a woman who was remarried to a common pleas judge of that county would have to appear before one of her husband's judicial colleagues in a child support action initiated by the woman's ex-husband).

There is no legal authority for the proposition that when a biological relative of a county row officer is called as a witness, the district attorney and entire bench of that county must remove themselves from the case. See,

e.g., Commonwealth v. Lutes, 793 A.2d 949, 956-57 (Pa. Super. 2002) (holding that the trial court did not err in denying a motion to disqualify the district attorney's office and no conflict of interest existed where the victim was a county commissioner).

Furthermore, during jury selection, the trial court informed the jury of the family relationship between Griffith and Prothonotary Patton. N.T., 1/7/19, at 69-70. The court inquired as to whether this fact would have any impact on their ability to be fair and impartial. Id. No juror responded that it would, and Appellant's counsel made no further inquiries. Id. The trial court has also considered testimony from Blair County First Deputy Prothonotary Vicky Claar about any conflict of interest. Ms. Claar stated that steps were taken to insulate Prothonotary Patton from any involvement with Appellant's case and any issues related to Griffith, and averred that no conflict of interest existed. See N.T., 8/7/18, at 27-34. Moreover, Appellant concedes that he "is not challenging any personal impropriety on the part of the [trial] court or the District Attorney's Office"; Appellant's Brief at 48. Upon review, we discern no evidence to support a finding of bias, prejudice or unfairness. See, e.g., Opinion and Order, 9/20/19, at 13 (explaining that the trial court had no social and minimal professional contacts with Prothonotary Patton). Finally, to the extent Appellant emphasizes the plea deal that the District Attorney's Office offered Griffith in exchange for her testimony at Appellant's trial, see Appellant's Brief at 46-48, this is a routine occurrence and function

of the prosecution's authority, and there is no evidence indicating that the prosecution was partial. Accordingly, Appellant's seventh issue does not merit relief.

In his eighth issue, Appellant contends that the trial court abused its discretion in denying his motion for a continuance filed four days prior to jury selection. See Appellant's Brief at 53-55. According to Appellant, his defense counsel:

> needed further investigation of various matters which was exemplified by what occurred at the trial with respect to the introduction of testimony of Ashley Brubaker, the purported false statements given by Kelsey Bergman[,] and the previous undisclosed testimony of the expert witness, Agent Thomas Moore.

Id. at 55.

> We recognize:
>
> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. ... Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record.

Commonwealth v. Brooks, 104 A.3d 466, 469 (Pa. 2014) (citation modified). Trial judges "necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Commonwealth v. Sandusky, 77 A.3d 663, 671 (Pa. Super. 2013) (citation

omitted); see also Commonwealth v. Antidormi, 84 A.3d 736, 745-46 (Pa. Super. 2014) (stating that an appellant "must be able to show specifically in what manner he was unable to prepare for his defense or how he would have prepared differently had he been given more time. We will not reverse a denial of a motion for continuance in the absence of prejudice."). To determine whether a trial court erred in denying a continuance request, "we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance." Sandusky, 77 A.3d at 672.

The case against Appellant was initiated in July 2017. Appellant filed the motion for continuance approximately 1½ years later, and just four days prior to jury selection on January 7, 2019. The record shows that the trial court had: (1) considered numerous pre-trial motions filed by Appellant; (2) previously granted several other continuances requested by Appellant; (3) ensured that discovery was completed; and (4) appointed an expert witness and an investigator to assist Appellant's defense. Additionally, trial had previously been delayed after Appellant fired his first counsel and chose to proceed pro se, but eventually had new counsel appointed to represent him.

Further, Appellant's defense counsel was informed in October 2018 that the case would proceed to trial in late January 2019. See N.T., 10/9/18, at 43-44. Notably, on November 27, 2018, the following exchange occurred between the trial court and defense counsel:

> BY THE COURT: ... I can resolve [any outstanding matters] for this matter to go to trial January 28th[, 2019]. It is two full months. ...
>
> [Defense counsel]: I am okay with January 28th.

N.T., 11/27/18, at 113 (emphasis added).

The record supports the trial court's statement that there "was no presentation to the court, nor did it appear to the court prior to trial, that counsel for [Appellant] felt he was unprepared for trial." Opinion and Order, 9/20/19, at 34. Finally, we discern no record support for Appellant's claim that he was prejudiced by the court's refusal to afford him yet another continuance, especially one requested so close to trial. See, e.g., Antidormi, 84 A.3d at 746 (holding that the trial court properly denied the defendant's fifth request for a continuance, made on the first day of trial, which was based upon nothing more than a bald allegation by defense counsel of insufficient time to prepare). Accordingly, the trial court acted within its discretion in denying Appellant's request for a continuance.

In his ninth and final issue, Appellant contends that the trial court deprived him of a fair trial by permitting the Commonwealth to introduce the CellHawk historical cell site location information (CSLI) for his phone without first obtaining a search warrant pursuant to Carpenter, 138 S. Ct. 2206. See Appellant's Brief at 25-26. The United States Supreme Court held that, absent a specific exception to the warrant requirement, law enforcement must first

obtain a search warrant supported by probable cause in order to obtain CSLI from wireless service providers. Carpenter, 138 S. Ct. at 2221.

In reviewing Appellant's claim:

our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

The trial court concluded that Appellant waived this issue because he failed to timely raise a claim implicating Carpenter prior to his post-sentence motion. See Opinion and Order, 9/20/19, at 25-32; see also id. at 32-33 (opining that even if the claim was preserved, it lacks merit because any error in admitting the CSLI evidence was harmless given the totality of the other overwhelming evidence of Appellant's guilt). We agree, as the rationale is again supported by the record and law. Therefore, we affirm Appellant's final issue on this basis. See id. at 25-33.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/11/2020

# IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,      :
     :
     :      1880 CR 2017
v.      :      0773 CR 2018
     :
KASHIF OMAR ELLIS,      :
         DEFENDANT,      :

ELIZABETH A. DOYLE      PRESIDING JUDGE

PETER WEEKS, ESQ.      COUNSEL FOR COMMONWEALTH
NICHOLE SMITH, ESQ.

R. THOMAS FORR, JR.      COUNSEL FOR DEFENDANT

## Opinion and Order

### Introduction

And now, this 20 day of September, 2019, before the court are the Post-Sentence Motions filed by the Defendant, Kashif Omar Ellis, ("Ellis") on April 26, 2019. On July 31, 2019, the court granted an extension to decide the post-sentence motions. Memoranda were received from the parties, and the matter is ripe for decision.

### Applicable Law

The court will briefly address the applicable law governing post-sentence motions prior to listing Ellis's specific issues. Post sentence motions are governed by Pennsylvania Rule of Criminal Procedure 720 (B) (1), which provides:

(B) Optional Post-Sentence Motion.

(1) Generally.

(a) The defendant in a court case shall have the right to make a post-sentence motion. All requests for relief from the trial court shall be stated

1



with specificity and particularity, and shall be consolidated in the post-sentence motion, which may include:

(i) a motion challenging the validity of a plea of guilty or nolo contendere, or the denial of a motion to withdraw a plea of guilty or nolo contendere;
(ii) a motion for judgment of acquittal;
(iii) a motion in arrest of judgment;
(iv) a motion for a new trial; and/or
(v) a motion to modify sentence.

Pa. R. Crim. P. 720 (B) (1).

Pa. R. Crim. P. 720 also states that issues raised before or during trial shall be deemed preserved for appeal whether or not the defendant elects to file a post sentence motion on those issues. Pa. R. Crim. P. 720 (B) (1) (c). Accordingly, a waiver argument appropriate for appeal need not necessarily be raised before the court or decided by the court on the post-sentence motions; but since the Commonwealth has alleged waiver as part of its argument, the court will address whether issues raised by the defendant in his post sentence motions were raised before or during trial.

<u>Substance of Post-Sentence Motions</u>

Ellis's Post-Sentence Motion is entitled broadly in two sections, "Motion for Reconsideration and Modification of Sentence" and "Motion for Reconsideration of Sentence, Arrest of Judgment and a New Trial." DEFENDANT'S POST-SENTENCE MOTION, 4/26/19, p. 1 (unpaginated). The first section, entitled "Motion for Reconsideration and Modification of Sentence," (Motion I), contains five (5) subparagraphs that generally recite the procedural history of the case. ID. The second section entitled, "Motion for Reconsideration of Sentence, Arrest of Judgment and a New Trial" (Motion II), is divided into eleven (11) lettered subparagraphs. ID., pp. 1-3. Addressing Motion II first, ten of

2

these subparagraphs contain substantive requests for relief.[1] Ellis does not specify what relief in each of these numbered paragraphs he is requesting (i.e. a new trial, the arrest of the jury's judgment, and/or a reconsideration of his sentence). Moreover, none of the allegations of error concern Ellis's sentence. The majority of these motions describe alleged errors made by the court pre-trial, rather than allegations of error during the trial. None of the issues raised involve questions of weight and/or sufficiency of the evidence presented by the Commonwealth at trial. **Normally, in a post sentence motion the allegation would be that the jury rendered the verdict but that as a matter of law the evidence was not sufficient, or sufficient but clearly against the weight or incredible such that the court should set aside the jury's verdict.** Most of Ellis's motions begin with an indication that Ellis "was denied a fair trial." Such an averment is indicative of a motion for a new trial, not a motion in arrest of judgment. As mentioned, none of the motions indicate the court should reconsider or modify Ellis's sentence, despite being styled in part as a "Motion for Reconsideration of Sentence..." As a result, it is difficult for the court to address Ellis's claims using the proper legal standard, or to give him relief.

The specific issues raised by Ellis in his Post-Sentence Motion are as follows:

a.   Your Petitioner believes and therefore avers that he was denied a fair trial by the jury of his peers in that the Blair County Court and the District Attorney's Office should have recused itself because of the appearance of impropriety in that the Commonwealth's chief witness against the Defendant in this matter was Taylor Griffith, the daughter of Robin G. Patton, the Prothonotary and Clerk of Courts of Blair County for the reasons set forth in your Petitioners (sic) Pre-Trial Motion with the hearing held on November 27, 2018.

b.   That your Petitioner believes and therefore avers the Court erred in denying his Franks motion in that the warrants issued to obtain

---

[1] Subparagraph k is a request for transcripts.

3

evidence of the electronic surveillance in this matter were obtained in violation of [*Franks v. Delaware*] in that the affidavit was obtained using, knowing or with reckless disregard to the truth of the statements or information provided by unreliable witnesses and based upon the actions and the activity of the officer who sought the warrant namely Sergeant Matthew Starr, an Altoona Police Department detective who was subsequently convicted and sentenced on charges involving fraud.

c.  The Defendant was denied the right to a fair and impartial trial where the Commonwealth failed to advise petitioner/defendant that the Commonwealth had knowledge of the untruthfulness of the purported statement of potential Commonwealth witness, Kelsi Bergmann, until the time of trial in violation of Brady v. Maryland.

d.  The Defendant was denied the right to a fair and impartial trial where this honorable court refused to suppress or limit the interceptions of his phone records and written communications obtained from the State Correctional Institution at Graterford and the State Correctional Institution at Huntingdon which the Commonwealth used to present, in essence, a confession given by the Defendant during the Commonwealth's closing argument to the jury.

e.  The Defendant was denied the right to a fair and impartial trial where the Commonwealth failed to provide the Petitioner/Defendant with discovery of all the expert reports, specifically where the Commonwealth called a witness from the Pennsylvania Office of Attorney General to explain certain language and words purportedly used by the Defendant without the Commonwealth providing said information through discovery before commencement of the jury trial.

f.  The court erred when it denied the Defendant's request for a mistrial where the jury pool was able to observe the Defendant in shackles with respect to this hands and feet immediately before and during jury selection.

g.  The Defendant was denied the right to a fair and impartial trial where the Commonwealth failed to provide the statements of Commonwealth witness, Ashley Brubaker, prior to the trial so as to permit the Defendant to investigate said statements.

h.  The Defendant was denied the right to a fair and impartial trial when the Defendant was denied his rights under the Confrontation Clause of both the United States Constitution and Pennsylvania Constitution

4

to cross-examine a Commonwealth witness, Travis Denny, with a letter which would have been used for impeachment purposes.

i.    The Defendant was denied the right to a fair and impartial trial where the Commonwealth obtained evidence as to pinging of the Defendant's cell phone through a court order instead of properly obtaining a warrant for said evidence as required by *Carpenter v. U.S.* [citation omitted].

j.    The Defendant was denied the right to a fair and impartial trial where the trial court improperly denied a continuance request by the Defendant for the purpose of further reviewing and investigating discovery provided by the Commonwealth to more properly craft a defense to each of the charges at the above-captioned criminal action numbers.

ID., pp. 1-3 (some words and phrases omitted). Prior to addressing each of these issues, the Court shall briefly discuss the procedural history of this case.

## PROCEDURAL HISTORY

On February 1, 2019, Ellis was convicted of Criminal Homicide of the First-Degree and all other charges filed to case number CP-07-CR-0001880-2017, after a five (5) day jury-trial. On the same day, Ellis was convicted of Retaliation Against a Witness and all other charges filed to case number CP-07-CR-0000773-2018. On April, 16, 2019, the court sentenced Ellis to life in prison without the possibility of parole followed by twenty-three (23.5) to forty-seven (47) years of incarceration. On April 26, 2019, Ellis filed Post-Sentence Motions. On July 31, 2019, the court granted Ellis's request to extend the time for deciding the motions. On September 5, 2019 the court entertained argument on the motions. Ellis was not present at this proceeding because he refused to be transported from the State Correctional Institution. The court shall now briefly recount the factual background of this case.

5

## FACTUAL BACKGROUND

Ellis was convicted of, *inter alia*, first degree homicide for shooting and killing Stephen LaMont Hackney ("Hackney") in the early morning hours of July 13, 2013. The murder occurred in the course of a robbery/home invasion at 124 Walnut Street in the City of Altoona, Pennsylvania ("the apartment"). The trial testimony revealed that Ellis's co-defendants in this armed robbery- turned- homicide were Taylor Griffith ("Griffith") and Qasim Green ("Green"). The homicide remained unsolved for approximately four (4) years. One of the Commonwealth's key witnesses was Griffith, who testified that she assisted in what she indicated she assumed was going to be only a robbery of Hackney. She testified that she witnessed Ellis burst through Hackney's bedroom door and fire three rounds from a semiautomatic pistol at Hackney, who collapsed to the floor. One shot penetrated the outer wall and went into the house next door. Griffith also testified that upon Hackney collapsing to the floor, bleeding, Ellis turned the gun on her and stated, "run, bitch."

Another cornerstone of the Commonwealth's case was testimony from Travis Denny, an individual who testified that he was cellmates with Ellis at SCI Huntingdon. He testified that he and Ellis were watching the television show "The First 48", when Ellis told him that he shot somebody three times and never got caught. Ellis told Denny that the person he shot was named Steve. Ellis further told Denny he shot Steve for money, and that he ran out the back door of the house and dropped money as he ran. He testified that he met Steve through his girlfriend Taylor. The testimony and exhibits at trial revealed that Stephen Hackney was shot, three shots were fired, and money was found on the

6

stairs and the floor of the house where Hackney was killed, and that the defendant's girlfriend was Taylor Griffith.

Griffith is the daughter of the Blair County Prothonotary/Clerk of Courts, Robin Patton. At jury selection the court disclosed this relationship, and asked the prospective jurors whether it would have any impact on their ability to be fair and impartial jurors in the case. There was no response from the prospective jurors to the court's question, and no further inquiries made by defense counsel.

As noted previously, Hackney was killed July 13, 2013. One of the early investigators in the case was former Altoona police detective Matthew Starr, who after the bulk of the investigation was convicted of fraud on an unrelated matter. Ellis at no time called or attempted to call former Detective Starr to the witness stand before trial to raise an issue relative to *Franks v. Delaware,* 438 U.S. 154 (1978).

Ellis made a number of phone calls from prison, which were recorded and used against him at trial by the Commonwealth. Before trial Ellis requested that these be suppressed or limited. The court denied this motion in an order filed of record October 26, 2018, without prejudice to Ellis. The record reflects that Ellis never renewed this argument or supplanted it with the court. Further, during the fourth day of trial, when the Commonwealth sought to play portions of the recorded telephone calls between Ellis and Griffith and Ellis and a Jarell Smith, counsel for Ellis requested that the entire telephone call, including the portion of the call that indicated that it was made from prison, be played for the jury. That call indicated a discussion about a cell phone dropped by Green. When told that the police had found the phone and that they believed it would lead them to the killer, Ellis said, "It's over for me, dog—I know he's going to breathe."

7

Commonwealth Atty. Gen. Agent Thomas Moore was called by the Commonwealth to aid the jury in understanding the vernacular in which the defendant and codefendants spoke and the slang they used in their communication. He explained that "breathe" meant to testify against someone. The Commonwealth provided written notice of Agent Moore's testimony on April 18, 2018. At trial, after the Commonwealth conducted an examination regarding agent Moore's expert qualifications and moved for the court to recognize him as an expert, counsel for Ellis was given an opportunity to cross-examine the witness. Counsel accepted the witness as an expert.

Ellis's conduct prior to trial included misconduct at the Blair County prison, and threats against prison personnel and codefendant Griffith. His attitude before the court in pretrial proceedings led the court to specifically warn him that his conduct would determine whether he was shackled for or present at various court proceedings. Because of his actions, he was shackled during jury selection and at trial. The record of jury selection does not demonstrate that the jurors viewed restraints on Ellis at jury selection. It is not contested that restraints were invisible during the trial.

Part of the Commonwealth's case included evidence illustrated by the Cell Hawk technology that showed cellular telephone towers receiving pings allegedly from cell phones identified as being associated with a family member of Ellis and associated with Griffith, and which corroborated Griffith's account that after the murder she and Ellis fled to Philadelphia. The Cell Hawk technology was challenged by both Green and by Ellis as being scientifically unreliable and was the subject of extensive testimony on August 20, 2018.

8

Robert Donaldson, Esquire, filed an Omnibus Pretrial Motion for relief on behalf of Ellis on March 19, 2018. After he was discharged by Ellis as counsel, on October 1, 2018, Ellis filed an Omnibus Pretrial Motion for relief as a self-represented litigant which was allowed by the court even though it was untimely. Attorney Donaldson's Omnibus Pretrial Motion was in the nature of a writ of habeas corpus and a motion for his client to be able to have hard copies of discovery documents prior to trial. At hearing held on the Omnibus pretrial Motion on March 23, 2018 Atty. Donaldson asserted that he was going to file additional motions, one having to do with the software called Cell Hawk, and a motion for change of venue. Ellis's Omnibus Pretrial Motion contained a Motion to Dismiss all Charges, a Motion for Change of Venue and Venire, a Motion for Severance, a Motion to Suppress: Prison Phone Call Recordings and Prison Inmate Mail/Letters, a Motion to Suppress: Warrant for Sprint Cellphone#(267)257-3995 and/or Procedural and Jurisdictional Defects dated 1/17/2014, a Motion to Suppress: Procedural and Jurisdictional Defects Search Warrant 7/22/2013:, a Motion to Suppress and/or Excluded (sic) Additional Physical Evidence or Materials at Trial:, a Motion for In Forma Pauperis Status:, a Motion for Appointment of Experts:, and a Motion for Appointment of Investigator. Separately, at various hearings, Ellis also joined generally in motions by codefendant Green about the scientific reliability of the Cell Hawk technology proffered by the Commonwealth.

There was no Motion to Suppress Ellis's geographic location through the use of his cell phone of cell tower location information contained in Attorney Donaldson's Omnibus Pretrial Motion. He did join in a suppression motion made by Attorney Dickey to suppress Green's Samsung cell phone found outside Hackney's residence. Transcript

9

of Oral Argument, 06/22/18, p.2. Ellis's pro se Omnibus Pretrial Motion included a "Motion to Suppress: Warrant for Sprint Cellphone #(267)257-3995 and/or Procedural and Jurisdictional Defects dated 1/17/2014". In it, he asserted that the Commonwealth sought and requested the court to issue an order directing the disclosure of records concerning electronic communication services provided in section 6743 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5743. He also asserted that police officer Matthew S. Starr sought permission and/or authority to obtain a search warrant for the contents of (electronic information stored within) a Sprint cell phone with the number 267-257-3995. The court can find no record that such search warrant was sought, and the Commonwealth asserts that one was not obtained for telephone number 267-257-3995.[2]

Ellis also asserted that the search warrant lacked the signature of issuing authority and was procedurally defective. In his motion, although he used the number 267–257–3995 in its caption, he identified the cell phone he was talking about as a Sprint HTC cellular phone (model PG 86100), fcc id, nm8pg86100, meid hex a10,000 17 bdf 44, 5/n16 nh27689, with the contents to be searched to include, but not be limited to, calls received, calls made, missed calls, contacts within phone, text messages received, but not limited to, voicemail, videos, downloads, emails and pictures stored within. He stated that a copy of the applicable search warrant was attached to his motion and made part thereof, as Exhibit C. He requested a hearing pursuant to *Franks v Delaware*, 438 U.S. 154 (1978), alleging that Matthew S. Starr was subsequently terminated from the Altoona Police Department for fraud and dishonesty. He requested the court to suppress any and all

---

[2] At the motions hearing on August 7, 2018, Ellis stated that the phone subscriber of that number was Nafeesah Ellis.

10

evidence of the Sprint cell phone dated 1/17/14. The affidavit of probable cause of the search warrant attached to the defendant's motion as exhibit C reveals that the Sprint HTC cellular phone model PG 86100, with the other identifying numbers used by defendant in his motion, was found on the dresser in the victim's bedroom. The affidavit also revealed that the cell phone has been in the custody of the Altoona Police Department evidence room since the time of the incident.

At the time the motion was filed, Ellis, who had been a pro se litigant, was represented by Attorney Forr, who had been appointed to represent him on September 26, 2018. Regardless of whether this Omnibus Pretrial Motion for Relief thus constituted hybrid representation, Ellis did not raise in his motion any request to suppress information about the location of this cell phone. His final requested relief was for the court to "suppress any and all evidence seized pursuant to the search warrant and/or procedural jurisdictional defects of the Sprint cell phone dated 1/17/14."

Ellis also filed a Motion to Suppress and/or Excluded (sic) Additional Physical Evidence or Materials at Trial. In item A he sought to suppress any and all prior bad acts of defendant Ellis; in item B he sought to suppress any and all prior criminal convictions; in item C, he sought to suppress the "geographical origins of Defendant Ellis". He went on to list with specificity other items and witnesses' statements and telephone calls he wished to have suppressed. By the plain reading of item C as listed, the court took it to mean where he was born or originally from, as he was not originally from Blair County, but from the City of Philadelphia. No request to suppress his geographic location or that of his cell phone is included in this section of his motion.

11

In a hearing on the Omnibus Pretrial Motion held October 9, 2018, counsel for Ellis mentioned the *Carpenter* case. After that hearing the court gave counsel twenty days to submit a brief. Transcript of Motions in Matter, 10/09/18, p. 28, ll. 22-25. Briefs were submitted and the court rendered an Opinion and Order on December 14, 2018. Notably absent from the arguments is any mention of suppressing evidence pursuant to *Carpenter*.

At trial, the Commonwealth introduced numerous other fact witnesses besides Griffith and Denny, and also expert witnesses, that established its theory of the case of Ellis as the murderer. Also during the trial, Ellis unsuccessfully attempted to demonstrate that the investigation was incomplete and that there was a party going on downstairs at the decedent's residence, as evidenced by the numerous shoes in the living room, the Newport cigarettes throughout the house, the many alcohol bottles throughout the house, and marijuana in the home as well, and that it could have been someone else that committed the murder. The jury rejected this theory.

We shall now address each of the issues raised by Ellis in his post-sentence motion seriatim.[3]

1. **There was no actual conflict nor any appearance of impropriety such that the court should have recused itself or the remainder of the Blair County Bench. The court further has no power or authority to force the District Attorney's Office to recuse itself from a case based on a mere accusation of a conflict of interest.**

The applicable legal standard for a motion seeking recusal of a judge is as follows:

We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. A trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be

---

[3] The court has merely substituted numbers for letters.

reasonably questioned. In order to prevail on a motion for recusal, the party seeking recusal is required to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.

*Interest of L.V.*, 209 A.3d 399, 415 (Pa. Super. 2019) (internal citations and quotation marks omitted). In seeking to disqualify a prosecutor, a defendant must show more than mere allegations of a conflict of interest. *Commonwealth v. Mulholland*, 702 A.2d 1027, 1037 (Pa. 1997). Ellis contends that because Griffith is the daughter of the elected Prothonotary of Blair County, Robin G. Patton ("Patton")[4], the entire bench of Blair County and the District Attorney's office should not have participated in his trial. Before jury selection, the trial court placed on the record that it had no social and minimal professional contacts with the elected Prothonotary, and made a determination that the court could preside impartially over the matter. At jury selection the court disclosed the relationship between Griffith and the elected Prothonotary to the prospective jurors. N.T., 01/07/19, pp. 69-70. There was no response from the prospective jurors to the court's question regarding this relationship and whether it would affect jurors' ability to be fair, and no further inquiries made by defense counsel. Id. Ellis points to no other mention of this relationship in the actual trial record.

The terms of Griffith's plea agreement were freely admitted by the Commonwealth in this case. Ellis also readily concedes that he is not leveling any accusations of this court being "biased, prejudiced or unfair." Moreover, he cites to cases that are completely inapposite. *See Commonwealth v. Eskridge*, 604 A.2d 700 (Pa. 1992); *Comm. ex rel. Armor v. Armor*, 398 A2d.173 (Pa. Super. 1979).

---

[4] Robin G. Patton was not a witness at trial.

13

In short, despite quoting at length from the judicial canons and cases that describe prosecutors as "stewards of justice," Ellis provides no legal authority that stands for the proposition that when a biological relative of a county row officer is called as a witness in a case, the bench and district attorney of that county must remove themselves from the case. Nor does he point to any decision rendered by the court that was improperly based on bias, prejudice or unfairness.

Moreover, the court heard extensive testimony from First Deputy Prothonotary Vicki Claar at the hearing on August 7, 2018. Notes of Testimony on Omnibus Pre-Trial Motions, 8/7/18, pp. 27-34. Ms. Claar testified that the Prothonotary's office took steps to insulate Patton from any involvement in issues related to Griffith. Id. Finally, Ellis offers no substantive evidence, nor even any allegation, that the district attorney's office had a conflict of interest arising out of the relationship between Griffith and Patton. Finding no support in the record nor in the law for Ellis's claims in his first issue, the court shall deny the same.[5]

## 2. The court properly denied Ellis's Motion to Suppress evidence.

The court notes that with respect to this issue we rely primarily on our prior Opinion and Order entered of record on December 28, 2018. Additionally, as argued by the Commonwealth in its memorandum of law to the court, Ellis at no time called or attempted to call former Detective Matthew Starr to the stand to raise an issue relative to *Franks v. Delaware*, 438 U.S. 154 (1978). The Pennsylvania Supreme Court has explained the holding in *Franks*:

> The United States Supreme Court recognized the right to challenge an affidavit's veracity in *Franks v. Delaware*, [...] which addressed whether a

---

[5] The court also notes that it entered an order on November 27, 2018 denying the motion for recusal and indicating that the court had no relationship with Patton that would create an appearance of impropriety.

14.

defendant has the right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual averments in an affidavit of probable cause. The Court held where the defendant makes a substantial preliminary showing the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit, the Fourth Amendment requires a hearing be held at the defendant's request. The Court emphasized the defendant's attack on the affidavit must be 'more than conclusory and must be supported by more than a mere desire to cross examine [ ]'; the defendant must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. If the defendant meets these requirements, but the remainder of the affidavit's content is still sufficient to establish probable cause, no hearing is required. If the affidavit's remaining content is insufficient, a hearing is held, at which the defendant must establish, by a preponderance of the evidence, the allegation of perjury or reckless disregard. If he meets this burden, the affidavit's false material is disregarded; if its remaining content is insufficient to establish probable cause, the search warrant is voided, and the fruits thereof are excluded.

*Commonwealth v. James*, 69 A.3d 180, 188 (Pa. 2013) (internal citations omitted). Ellis still points to no "deliberate falsehood or reckless disregard for the truth" nor any offer of proof pursuant to *Franks*. Ellis's bald-faced assertion is that Detective Starr committed a fraud in an unrelated matter so therefore, he committed a fraud in this case. Other than that faulty logic, Ellis offers no substantive argument as to how the court erred in denying his motion to suppress. Accordingly, his motion is denied.

3. **There was no *Brady* nor other discovery violation regarding the testimony of Kelsi Bergmann.**

In the landmark case of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Pennsylvania Supreme Court has held:

[T]o prove a Brady violation, the defendant has the burden of demonstrating that: "(1) the prosecutor has suppressed evidence; (2) the evidence,

15

whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence. Further, "[f]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Commonwealth v. Koehler*, 36 A.3d 121, 133 (Pa. 2012) (internal citations omitted). Ellis argues that the Commonwealth failed to disclose the "untruthfulness" of Bergmann's testimony. Bergmann was not called as a witness by the Commonwealth nor was she called by Ellis. As noted by the Commonwealth, any discrepancy in Bergmann's statements could have been demonstrated by Ellis during his case-in-chief. For these reasons, no discovery violation occurred and no relief is due. This motion is denied.

4. **The court did not err in refusing to limit or suppress the interception of his phone records and written communications obtained while he was incarcerated, nor did it err in allowing them to be played for the jury. No objections were raised at trial to these recordings.**

Ellis presents a boilerplate argument relative to his right to be free from unreasonable searches and seizures in support of his contention that the content of his prison calls should have been suppressed. However, as correctly pointed out by the Commonwealth, the court specified in its Order dated October 9, 2018 and filed of record on October 26, 2018 that the court denied this motion without prejudice to Ellis. Specifically the court indicated that the motion to suppress was denied "without prejudice to the Defendant's ability to raise an individual item of correspondence and establish an expectation of privacy, such that the matter should be litigated." ORDER, 10/9/18. The record reflects that Ellis never renewed this argument nor supplemented it with the court. Therefore, the court finds this issue waived at this stage of the proceedings. Ellis never

16

raised or attempted to articulate any reasonable expectation of privacy in his communications from prison, either by mail or by telephone. *See Commonwealth v. Hawkins*, 718 A.2d 265, 268 n.3 (Pa. 1998) (it is "an essential element" for a defendant seeking suppression to satisfy the burden of proving that he or she has a legitimate expectation of privacy); *Commonwealth v. Caban*, 60 A.3d 120, 126 (Pa. Super. 2012), *appeal denied*, 79 A.3d 1097 (Pa. 2013) ("To prevail in a challenge to the search and seizure, [...] a defendant accused of a possessory crime must [] establish, as a threshold matter, a legally cognizable expectation of privacy in the area searched.")[6]

Moreover, the Pennsylvania Superior Court has held that a prisoner has no reasonable expectation of privacy in his non-privileged mail. *Commonwealth v. Moore*, 928 A.2d 1092, 1102 (Pa Super. 2007). In *Commonwealth v. Prisk*, 13 A.3d 526, (Pa. Super. 2011), the Superior Court held that an inmate did not have a reasonable expectation of privacy in conversations that he had in a prison visitation room. *Id.* at 532. In *Commonwealth v. Byrd*, the Superior Court held that the evidence in that case (including a warning that the calls were recorded played during the conversation) demonstrated that defendant consented to recording of jailhouse telephonic conversations with visitors, under the mutual consent exception to the Wiretap Act. *Id.*, 185 A.3d 1015, 1019 (Pa. Super. 2018). In regards to a telephone call between an inmate and his parents, the Pennsylvania Supreme Court in *Commonwealth v. Baumhammers* observed:

> Simply stated, there is no basis to conclude that the privacy rights of Appellant or his parents were infringed when their March 2, 2001 telephone conversation was recorded. These individuals were actually aware that their

---

[6] The *Caban* case was overruled on other grounds. *see In re L.J.*, 79 A.3d 1073 (Pa. 2013) (prospectively holding that an appellate court reviews the suppression evidence and does not also consider trial evidence in determining the correctness of a suppression court ruling).

17

telephone conversation was being or could be intercepted and recorded by prison authorities.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 79 (Pa. 2008).

The court permitted Ellis to raise the issue of the intercepted communications and not only did he fail to do so or attempt to litigate the issue, he never specifically objected to the admission of the same. The Commonwealth offered to redact the calls of certain information regarding Ellis's incarceration. Notes of Testimony, 01/28/19, pp. 277-279. There was no objection by Ellis when the Commonwealth's witness, Travis Denny ("Denny"), testified that he was incarcerated with Ellis at SCI Huntingdon. Notes of Testimony, 01/29/19, pp. 76-80. The Commonwealth clearly put on the record that this information was part of Denny's testimony and no objection was lodged at any time prior to Denny's testimony. Id., 01/29/19, pp. 47-50. There was no objection by Ellis when the Commonwealth's witness, Lieutenant Anthony Eberling, testified that Ellis was incarcerated at SCI Huntingdon in the summer of 2017. Notes of Testimony, 1/30/19, p. 10, ll. 5-10. Nor was there any objection to the testimony of Corrections Officer Joseph Watt regarding Ellis's mail being scrutinized by the Department of Corrections. N.T., 1/30/19, pp. 27-32. There was no objection to the testimony of Corrections Officer Travis Weakland that dealt with the same topic. N.T., 1/30/19, pp. 33-38. The Commonwealth asked the defense, **the day before calling these witnesses**, if Ellis accepted the stipulation regarding the exhibits entered through these corrections officers regarding Ellis's mail monitoring by the Department of Corrections. N.T., 1/29/19, p. 137, ll.16-25. Counsel for Ellis indicated he consulted with Ellis and replied, "we have discussed them briefly and they are acceptable, Your Honor." Id., p. 138, 1-6. As argued by the Commonwealth, Ellis's objection at trial to the introduction of the letters written by him

18

from prison was "based upon the motion previously made." N.T., 1/30/19, p. 106, ll. 14-25.

There was no indication whether this was a reference to the suppression motion filed by Ellis and subject to the court's ruling in its October 9, 2019 order and there was no argument made relative to the objection. Id. During the fourth day of trial, when the Commonwealth sought to play portions of the recorded telephone prison calls between Ellis and Griffith and between Ellis and Jarell Smith, this exchange occurred:

**Counsel for the Commonwealth**: It is my understanding for the record we're playing the entire call at the request of Attorney Forr with no redactions first.

**Counsel for Ellis**: That's accurate, thank you.

N.T., 1/31/19, p. 61, ll. 18-21. Clearly the record supports the Commonwealth's contention that it was Ellis's desire to have the calls played in their entirety without redaction.

For all of the above stated reasons, Ellis has not established a basis for the court to grant any relief. The motion is denied.

**5. There is no merit to Ellis's motion regarding the Commonwealth's witness Supervisory Agent Thomas Moore ("Agent Moore").**

Ellis argues that the Commonwealth "violated the mandates of *Brady v. Maryland*" when it failed to disclose its intentions, before commencement of the trial, of calling Agent Moore to testify as an expert regarding certain language and words purportedly used by the Petitioner/Defendant." ELLIS'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF SENTENCE, ARREST OF JUDGMENT, AND A NEW TRIAL, 8/19/19, ¶ e (unpaginated). At trial,

19

after the Commonwealth conducted an examination regarding Agent Moore's expert qualifications and moved for the court to recognize him as an expert, Ellis's counsel conducted cross examination on this subject. N.T., 1/31/19, pp. 69-70. Defense counsel then indicated to the court, "I have no further questions. I will [accept] him as an expert he's been around. Thank you Your Honor." N.T., 1/31/19, p. 70, II. 23-25 (homophone inserted).[7] Notably absent from the record is any indication of surprise, any objection to Agent Moore being recognized as an expert or any mention that Ellis was unaware of this witness. To the contrary, the defense acceded to the Commonwealth's request to recognize Agent Moore as a witness and added, "he's been around." There is no means by which the court can now rule on this issue after the jury has rendered a verdict and there appears absolutely no evidence in the record that Ellis was unaware of this witness or what he was going to present to the jury. The Commonwealth provided written notice of Agent Moore's testimony on April 18, 2018. COMMONWEALTH'S NOTICE OF EXPERT TESTIMONY, 04/18/18, p. 8 ¶ 11, 12. The motion is denied.

### 6. There is no evidence of record that any member of the jury pool viewed Ellis in restraints.

Ellis points to no portion of the record that demonstrates that any member of the jury pool was able to see his restraints at jury selection on January 7, 2019. The indication that the court made that is quoted by Ellis as demonstrative that his "shackles" could **actually** be viewed is disingenuous because the record is clear that the quote on page 48 occurred at sidebar. Notes to Testimony at Jury Selection, 01/07/19, p. 48, II. 18-25.

---

[7] The court notes that the word "except" appears in the transcript. The court believes when the context of the record is viewed the word that should appear is "accept." These two words sound the same when spoken but have decidedly different meanings.

Rather, the court took the opportunity of a break to insure that it was not possible for a prospective juror to see the restraints. Notably, juror number 18 when questioned by Ellis's counsel if the juror noticed anything about Ellis this juror replied, "Not offhand, no." N.T., 01/07/19, p. 26, ll. 16-22. The court gave both defense counsel the opportunity to demonstrate on the record that the jurors could see Ellis's restraints. N.T., 01/07/19, p. 20, ll. 3-20. There simply is nothing in the record that demonstrates that the jurors viewed restraints on Ellis at jury selection. Moreover, even if a prospective juror did notice the restraints it is clear that the jury at some point became aware that Ellis was incarcerated. As previously indicated, Ellis either did not object to this fact being presented to the jury or he indicated his desire to have un-redacted prison calls presented to the jury. The Pennsylvania Supreme Court has observed:

> We observe at the outset that it is well-settled under common law and constitutionally as incident to a fair trial without prejudice that defendants appear free from shackles or other physical restraints. The sight of shackles and gags, moreover, constitutes an affront to the very dignity and decorum of judicial proceedings. While there exists a legal presumption against the necessity of physical restraint of an accused in the courtroom, there are exceptional circumstances when the employment of such techniques are an acceptable practice where such "restraint [is] reasonably necessary to maintain order." Exceptional circumstances often have been found in sister jurisdictions as well where the defendant disrupts the proceedings, where there is evident danger of escape, and where the court has reason to believe that an unrestrained defendant might attack others.

*Commonwealth v. Jasper*, 610 A.2d 949, 955 (Pa. 1992). The Commonwealth aptly cites to the considerations the court encountered with Ellis's pre-trial behavior. COMMONWEALTH'S MEMORANDUM IN RESPONSE TO DEFENDANT'S POST SENTENCE MOTIONS, 8/27/19, p. 13-14. All of this behavior factored into the court's thinking with regard to Ellis's potential to disrupt the proceedings. Still, the court believed it attempted to balance the need to maintain order and safety in the courtroom with Ellis's rights to not appear

21

before the jury in restraints. There is no indication that he was viewed either at trial or during jury selection in restraints. Nothing prevented counsel from asking or requesting the court to ask at sidebar whether any other juror noticed anything about Ellis such as restraints. Without such an indication in the record, no relief is due. Even assuming, *arguendo*, the jury or prospective jurors did view Ellis in restraints, such an occurrence did not prejudice Ellis where it was conceded by the defense that he was incarcerated prior to trial. Furthermore, this court took affirmative steps to insure that any restraints would not be visible to the prospective jury pool and the empaneled jury. The motion is denied.

7. **There is no merit to Ellis's contention that the Commonwealth's witness Ashley Brubaker was unknown to the defense and no objection lodged of record to her testimony.**

As is readily conceded by Ellis, he did not object to the Commonwealth calling Ashley Brubaker as a witness. N.T., 01/29/19, pp. 138-139. A thorough offer of proof was provided of her proposed testimony by the Commonwealth. Id. After this offer of proof, Ellis raised no objection, did not indicate surprise and otherwise offered no legal authority to prevent her testimony. Id. Simply put there is nothing preserved in the record for the court to analyze. If the defense was surprised by the Commonwealth's presentation of this witness the time to raise such an objection was at trial, not after the verdict was rendered.

The Commonwealth maintains that there was no formal interview conducted of this witness prior to January 29, 2019. If Ellis disputed this, he had the opportunity to raise it via cross examination. In fact, Ellis's counsel did inquire into when this witness first spoke to police and her answer was consistent with the Commonwealth's contention that she

22

spoke to them on the night of the homicide. <u>N.T.</u>, 01/29/19, p. 156-158. Additionally, the defense extensively cross examined this witness relative to text messages on the night of the homicide between her and Ellis. <u>N.T.</u>, 01/29/19, pp. 159-163. There is no merit to this motion and the court denies relief.

8. **The court's refusal to allow Ellis to cross-examine the Commonwealth's witness, Denny, with a document that was not authored by him was compelled by the Pennsylvania Rules of Evidence and applicable law.**

Ellis cites to the general applicability and foundational law enshrined in both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania. DEFENDANT'S BRIEF, 8/19/19, ¶ h (unpaginated). There was, however, no denial of the right to confrontation in this trial. As the Pennsylvania Superior Court has observed:

> The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy "the right to confront and cross-examine adverse witnesses." Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Although the right of cross-examination is a **fundamental right, it is not absolute.**

*Commonwealth v. Rosser*, 135 A.3d 1077, 1087-1088 (citations omitted, emphasis supplied). In *Rosser*, the Superior Court described the two-step inquiry regarding a violation of the right of confrontation when the trial court limits cross-examination that an appellate court must undertake:

> First, we inquire whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a "significantly different impression" of the witness's credibility? Second, if there was error, we must determine whether it was harmless beyond a reasonable doubt; if so, reversal is not warranted.

*Rosser*, at 1088 (citations omitted). A review of the trial transcript demonstrates that counsel for Ellis attacked Denny's motivation for testifying. <u>N.T.</u>, 01/29/19, pp. 86-95. The court put absolutely no limitation on this line of questioning and Denny readily

23

admitted that his motivation for testifying was that he wanted to receive "leniency." N.T., 01/29/19, p. 95, ll. 8-12. Denny was portrayed by this cross-examination as being motivated by his desire to have his sentence shortened. Therefore, there was not a significantly different impression presented to the jury when the court prevented defense counsel from using a writing not authored by the witness to impeach him.

"It is long settled that a prior inconsistent statement may be used to impeach a witness." *Commonwealth v. Brown*, 448 A.2d 1097, 1102 (Pa. Super. 1982) (citation omitted). "In order to do so, there must be evidence that the statement **was made or adopted by the witness** whose credibility is being impeached." *Id.*, (emphasis supplied) "Impeachment through extrinsic evidence is not generally allowed on matters collateral to the issues at trial." *Commonwealth v. Bailey*, 469 A.2d 249, 264-265 (Pa. Super. 1983). The Superior Court has discussed the proper methods for impeaching a witness:

> The credibility of a witness may be impeached (1) by showing that on a prior occasion **he made a statement**, either oral or written, that is inconsistent with his present testimony; (2) **by competent evidence** tending to show bias, bad character for truth and honesty, or defects in memory, perception or capacity or (3) by the **competent contradictory testimony of other witnesses** whose version of the facts differs from that of the witness being impeached.
>
> The first of these three methods of impeachment is obviously inapplicable, for **it is axiomatic that when attempting to discredit a witness' testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached.**

*Commonwealth v. Baez*, 431 A.2d 909, 912 (Pa. 1981) (emphasis supplied). When Ellis attempted to enter a letter written by Denny's girlfriend to Denny's attorney, the Commonwealth objected, arguing the identity of the author of this letter was not relevant

24

and that Denny was not the author of it. N.T., 01/29/19, pp. 87-89. This exchange then followed at sidebar:

> **The Court**: So how can this witness do anything except speculate about the motives of the person who wrote the letter?
>
> **Counsel for Ellis**: I am just going to ask if he talked to his girlfriend about this. If he talked to her and had requested she write a letter to his attorney seeking leniency.
>
> **Counsel for Commonwealth**: I don't object if he asks—
>
> **The Court**: But then at that point you still can't get into the contents of the letter.
>
> **Counsel for Ellis**: He is talking about heroin.
>
> **The Court**: Through this witness. If you can find the girlfriend and call her. I am not saying you couldn't get it in that way, but I don't know how you can get it in through this witness properly.

N.T., 01/29/19, p. 90, ll. 1-15. The court did not bar cross examination of Denny regarding his motivations to testify and did not bar the admission of the letter. The court merely indicated that if defense counsel conceded this letter was not authored by Denny he could not be cross-examined regarding the motivations of the person who did write it. The court also left the possibility of calling Denny's girlfriend open to the defense. Ellis did not call her. The motion is denied.

9. **By raising the issue for the first time in his post-sentence motion, Ellis has waived the challenge he now makes pursuant to *Carpenter v. United States*.**

Pennsylvania Rule of Criminal Procedure 581 states, in part:

25

(A) The defendant's attorney, or the defendant if unrepresented, may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights.

(B) Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. **If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.**

Pa. Crim. R. P.581 (A), (B) (emphasis supplied). On October 1, 2018, Ellis filed a *pro se*[8] Omnibus Pre-Trial Motion. **No argument or motion** relative to the decision in *Carpenter v. United States*, —— U.S. ——, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018) with regard to Ellis's historical cell site location information ("CSLI") was raised in this motion. At the hearing on October 9, 2018, counsel for Ellis mentioned the *Carpenter* case. After that hearing the court gave counsel twenty days to submit a brief. Transcript of Motions in Matter, 10/09/18, p. 28, ll. 22-25. Briefs were submitted and the court rendered an Opinion and Order on December 14, 2018. Notably absent from the arguments is any mention of suppressing evidence pursuant to *Carpenter*. Moreover, the written Omnibus Pre-Trial Motion for relief is docketed as filed on October 1, 2018. This filing as noted below is **after** the court appointed Attorney Forr to represent Ellis. The record reflects based on the testimony at trial that no objection to the introduction of this evidence was made and the defense attempted to counter it with their own expert rather than exclude it. Therefore, the issue has not been properly preserved and it is waived, as further demonstrated by the analysis below:

---

[8] The Court notes that Ellis waived counsel after a colloquy and was a self-represented litigant from approximately August 8, 2018 to September 26, 2018. On August 20, 2018, Ellis asked to have the court appoint counsel and the court appointed R. Thomas Forr, Esquire, as counsel on September 26, 2018. On October 9, 2018, Attorney Forr argued on behalf of Ellis based on the issues raised in his Omnibus Pre-Trial Motion.

26

The United States Supreme Court rendered its decision in *Carpenter* on June 22, 2018. In *Carpenter* the High Court held in a 5-4 decision, that because individuals retain a legitimate expectation of privacy in records of their physical movements, the government must generally obtain a search warrant supported by probable cause before acquiring CSLI from a wireless carrier. *Id.*, 138 S.Ct. 2206, 2221. Chief Justice Roberts, delivering the opinion for the majority, held that the federal authorities had run afoul of the Fourth Amendment by not procuring a warrant prior to accessing historical CSLI:

> The Government acquired the cell-site records pursuant to a court order issued under the Stored Communications Act, which required the Government to show "reasonable grounds" for believing that the records were "relevant and material to an ongoing investigation." 18 U.S.C. § 2703(d). That showing falls well short of the probable cause required for a warrant. The Court usually requires "some quantum of individualized suspicion" before a search or seizure may take place. United States v. Martinez–Fuerte, 428 U.S. 543, 560–561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Under the standard in the Stored Communications Act, however, law enforcement need only show that the cell-site evidence might be pertinent to an ongoing investigation—a "gigantic" departure from the probable cause rule, as the Government explained below. App. 34. Consequently, an order issued under Section 2703(d) of the Act is not a permissible mechanism for accessing historical cell-site records. Before compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one—get a warrant.

*Id.*

This court's research uncovered one reported case decided by the Pennsylvania Superior Court in the wake of the *Carpenter* decision that cites to the High Court's decision: *Commonwealth v. Pacheco*, ---- A.3d ----, 2019 PA Super 208, (2019). In *Pacheco*, the court held that for purposes of the Fourth Amendment analysis, *Carpenter* applies equally to real time CSLI as it does to historical CSLI. *Id.* Specifically, the Superior Court held:

27

> We see no meaningful distinction between the privacy issues related to historical as opposed to real-time CSLI. Indeed, in our view, the High Court's rationale in *Carpenter* applies with equal, if not greater, force to real-time CSLI. Thus, we conclude that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through both historical and real-time CSLI. Accordingly, prosecutors need to obtain a warrant supported by probable cause before obtaining this information.

*Id.* Importantly, and contrary to the case *sub judice*, the Superior Court found that the appellant had properly raised and preserved his challenge in the trial court. *Id.* The Superior Court also found that *Carpenter* should apply retroactively to the appellant's case in *Pacheco* because it was on direct review at the time the High Court rendered its opinion **and** the issue was properly raised and preserved in the lower court. The Superior Court in Pacheco observed:

> Based on our examination of the certified record, we conclude that Pacheco did, in fact, raise and preserve his constitutional challenge to the admission of real-time CSLI evidence. Pacheco filed a supplement to his motion to suppress in which he specifically claimed that prosecutors failed to "seek a search warrant from the [c]ourt to legally utilize 'Mobile Tracking Technology' ... or similar technology ... as ... is required and necessary under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution." Supplement to Motion to Suppress, 11/18/16, at unnumbered 1-2. Pacheco further claimed that the use of such technology "constitutes a 'search' under constitutional analysis which ... cannot be authorized without the issuance of a search warrant based on probable cause." Id. at unnumbered 2.
> Additionally, at the suppression hearing, Pacheco's counsel argued that "the orders that were issued by the [c]ourt for authorization for these electronic surveillances were illegal and unlawful orders because there were no limitations with respect to the manner and number of hours and circumstances that the Commonwealth would be able to utilize the real[-]time tracking technology." N.T. Suppression, 4/10/17, at 7. He further argued that "this is not permitted under the 4th Amendment." Id. at 8.

> Following the suppression hearing, Pacheco filed a supplemental brief where he again argued that the orders authorizing real-time CSLI tracking of his cell phone under Subchapter E of the Wiretap Act violated Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution "because the [o]rders fail[ed] to satisfy the

28

constitutional protections of the warrant requirement." Memorandum of Law in Support of Supplemental Motion to Suppress, 3/6/17, at unnumbered 14.

*Pacheco, supra.* These observations regarding the preservation of this issue in *Pacheco* stand in stark contrast to the record in the case *sub judice.* Simply put, the record does not show preservation or presentation of this precise issue to the court. This court cannot be expected, after the verdict in the case has been returned, to review an issue that was never **specifically and timely** raised prior to trial. The court was not presented with the authority and argument that Ellis now argues for the first time controls in this case.

This court's research also uncovered a reported case in Pennsylvania wherein the Pennsylvania Supreme Court cites to the *Carpenter* decision. The case is *Commonwealth v. Shaffer,* 209 A.3d 957 (Pa. 2019). In *Shaffer, Carpenter* is cited by Justice Wecht in a concurring and dissenting opinion. *Id.,* 209 A.3d 957, 978-991 (Pa. 2019). While the majority of the court found *Carpenter* not applicable to the facts because it maintained that *Shaffer* involved a private not a governmental search, Justice Wecht disagreed. Justice Wecht maintained, "[f]oremost, *Carpenter* expressly rejected the notion that a person loses all expectation of privacy in an object immediately upon it landing in the hands of a third party." *Id.,* at 989. While Justice Wecht provides a detailed description of *Carpenter* that the court found helpful, for the purposes of our analysis, this court finds *Shaffer* is not applicable to the case at bar. This is based on the majority of the Pennsylvania Supreme Court concluding that *Carpenter* did not apply in *Shaffer* and merely mentioning it in a footnote. *Id.,* at 976, n.14.

Clearly, this court is bound by the dictates of the *Carpenter* decision and its Pennsylvania progeny, however, the court finds that no effort was made to litigate this issue at the appropriate time and for all the aforementioned reasons, we again note that

29

this issue has been waived. The court does not find that the transcript of the proceedings on October 9, 2019 support Ellis's contention that he preserved this issue. The court gave Ellis time to brief or raise any issues **specifically** regarding this case. Ellis's defense at trial involved calling an expert to dispute or to call into doubt the geographical location data. No specific objection was lodged to the entry of the cell tower information during trial.

Prior to trial, on November 27, 2018, the court convened for oral argument on outstanding pre-trial issues. Notes of Testimony, 11/27/18. The court did indicate on the record what issues were still pending. Id., 11/27/18, p. 1, ll. 4-22. At this time there was **no mention** of suppressing the CSLI in this case. Id., 11/27.18, pp. 3-4. Ellis filed a motion *in limine* on January 4, 2019 that did mention excluding evidence of his geographic location but offered **no citation to controlling authority**. ELLIS'S MOTION IN LIMINE, 01/04/19. Rather, the motion asserts:

> The Defendant in his Omnibus Pretrial Motion raised the issue that the contents of his cellular phone should not have been subjected to seizure by the Commonwealth in that the Defendant had an expectation of privacy in his communications and had an expectation of privacy in his location which would eliminate any information obtained through the search of his cell phone and/or the use of cell tower location information.

ID., 01/04/19, ¶ 9. The motion that this paragraph refers to is presumably the pro se motion filed by Ellis on October 1, 2018, after he was appointed counsel. The paragraph set forth above from the Motion in Limine is not found in the October 1, 2018 motion which merely indicates, in boilerplate fashion, "the defendant requests that the following evidence and/or materials be excluded and/or suppressed from trial, but not limited to the following[.]" ELLIS'S PRO SE OMNIBUS PRE-TRIAL MOTION FOR RELIEF, p.16, ¶ 43. The motion then goes on to list, vaguely, nine subjects for suppression/exclusion. ID., p. 16,

30

¶ 43, (A)-(I). Among these subjects is, "(C) the geographical origins of Defendant Ellis." ID., p. 16, ¶ 43, (C). The plain reading of this is "where he comes from". It is a disingenuous stretch to characterize that request as a specific request to suppress CSLI. No citation to *Carpenter* is made by Ellis, nor is there an indication that he is challenging the CSLI pursuant to *Carpenter*, or raising a challenge pursuant to any specific authority. In the counseled Motion in Limine, referenced *supra* and filed on January 4, 2019, there is likewise no citation or reference to the *Carpenter* case.

The Commonwealth argued in response that the motion was not timely made as it was not proper to raise in such a motion pursuant to Pa. R. Crim. P. 579 because all pre-trial suppression issues had been disposed of by the court. [9] The Commonwealth also referenced a "lawful court order" that authorized the Commonwealth to retrieve Ellis's CSLI. On January 8, 2019, the court denied this motion to suppress information obtained from the Defendant's cellular phone through the use of cell tower information. There was never any effort made on the record to exclude this evidence in its entirety based on *Carpenter*. *Pacheco* had not yet been decided. As noted, the Commonwealth refers in its brief to a court order that was issued at some point prior to trial that authorized the Commonwealth to access the CSLI in this matter and the fact that it was supported by **probable cause**. It appears that this order was never made part of the record based on Ellis's failure to timely raise this issue pre-trial. If there was a finding of probable cause, it is quite possible that such an order would survive the scrutiny newly imposed by *Carpenter* and its progeny on the merits. However the court cannot pass on such an

[9] (A) Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

issue at this juncture as this document does not appear in the record.[10] The motion is denied as the issue has not been properly preserved and it is therefore, waived.

Additionally, the court submits on the basis of the entire trial record, that any alleged error in admitting Ellis's CSLI in this case was harmless. The Pennsylvania Superior Court has described the nature of the harmless error analysis:

> The Commonwealth bears the burden of establishing the harmlessness of the error. It must show at least one of the following: (1) The error did not prejudice the defendant or the prejudice was *de minimis* or; (2) The erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence or; (3) The properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fitzpatrick*, 204 A.3d 527, 533 (Pa. Super. 2019), *reargument denied* (Apr. 23, 2019) (citation and quotation marks omitted). In *Commonwealth v. Jacoby*, the Pennsylvania Supreme Court found that a search violated the Fourth Amendment but nonetheless found the inclusion of the evidence seized as a result of that search was harmless where it held, "... that the Commonwealth's evidence, sans [evidence seized without probable cause], was overwhelming, and that the introduction of the [evidence seized without probable cause] was "so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1086 (Pa. 2017), *cert. denied sub nom. Jacoby v. Pennsylvania*, 139 S. Ct. 58, 202 L. Ed. 2d 43 (2018).

In this case, the Commonwealth introduced a plethora of evidence to support its theory of the case that Ellis planned and orchestrated this scheme to rob Hackney. The

---

[10] Both parties may freely supplement the record subject to the Rules of Appellate Procedure and/or the Rules of Criminal Procedure.

robbery then quickly degenerated into a cold-blooded execution of Hackney as detailed in the testimony of Griffith. Ellis's action after the homicide and prior to his eventual arrest and trial demonstrated his consciousness of guilt and a clear effort to frighten Griffith, a key witness. Ellis's own words to Denny, that he shot Steve three times and dropped the money as he fled, and to Jerrell Smith, "It's over for me, dog, I know he's going to breathe," admit his guilt, and his fear that he would be found out.

The court believes that even if Ellis had raised and fully litigated a motion to suppress the evidence regarding his CSLI, the Commonwealth would not have been barred from submitting evidence regarding the CSLI of Griffith. Ultimately, this evidence would have been corroborative of Griffith's testimony and fit the Commonwealth's theory of the case. Moreover, as the presiding judge in this matter, we observe that the evidence of guilt in this matter was overwhelming. While we acknowledge that harmless error analysis is reserved for the appellate stage of this matter, we find if this issue was not waived, any error resulting from the admission of Ellis's CSLI was harmless beyond a reasonable doubt.

**10. The court did not abuse its discretion when it denied Ellis's continuance.**

The Defendant argues that the court should have granted his motion for continuance filed on January 7, 2019. In this motion, Ellis indicated through counsel that "he received documentation on December 31, 2018 requesting further investigation which cannot be completed before January 28, 2019." The Commonwealth opposed this continuance request. The Pennsylvania Supreme Court has held that trial courts are accorded wide latitude in ruling on pre-trial objections:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion

33

of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. Brooks*, 104 A.3d 466, 529–30 (Pa. 2014) (quotations marks, quotation, and citation omitted). The Pennsylvania Superior Court has indicated, "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa.Super.2013) (quotation omitted).

On November 27, 2018, the court conducted a lengthy conference regarding all of the witnesses' availability, including experts. Counsel for Ellis indicated that, "I am ok with January 28…" N.T., 11/27/18, p. 113, ll. 15-16. There was no presentation to the court, nor did it appear to the court prior to trial, that counsel for Ellis felt he was unprepared for trial. Over the course of this case, Ellis's requests for experts were granted and he called an expert during his case-in-chief. His vague argument regarding experts is belied by the record. The court entertained a litany of pre-trial motions in this case and freely granted requests for the appointment of the appropriate experts. For this reason, the court maintains that it did not abuse its discretion by denying Ellis's continuance filed less than a month before jury selection and trial was to commence. This case was filed by the Commonwealth in 2017 and involved a crime that occurred in 2013. The record reflects that the court's denial of this continuance was not arbitrary but rather

34

involved a balancing of the above-cited considerations and the complete absence of any specific compelling reason for rescheduling this matter. The motion is denied.

## Conclusion

For all of the foregoing reasons Ellis's post-sentence motions are denied and the following order in appropriate:

## ORDER

**AND NOW**, this day of September, 2019, it is hereby **ORDERED, DIRECTED** and **DECREED**:

a. the post-sentence motions are **DENIED** and **DISMISSED**;

b. Ellis has thirty (30) days to appeal this order to the Pennsylvania Superior Court.

BY THE COURT:

_____P.J.

**FILED**
BLAIR COUNTY, PA
ROBIN G. PATTON

SEP 2 0 2019

PROTHONOTARY
CLERK OF COURTS
CLERK OF ORPHANS COURT

35